**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WASTE SERVICES OF DECATUR, LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | **Case No. 1:17-cv-01030-STA-egb** |
| **v.** | ) | |
| | ) | |
| **DECATUR COUNTY, TENNESSEE,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WASTE INDUSTRIES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**ORDER GRANTING DEFENDANT DECATUR COUNTY'S MOTION FOR SUMMARY
JUDGMENT**

---

Before the Court is Defendant Decatur County, Tennessee's Motion for Summary Judgment (ECF No. 47) filed on February 8, 2018. Plaintiff Waste Services of Decatur, LLC has responded in opposition, and Defendant has filed a reply. For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

This is a contractual dispute between Decatur County, Tennessee, and Waste Services of Decatur, LLC (hereinafter "Waste Services"), the private firm operating the Decatur County Landfill. Decatur County seeks judgment as a matter of law on Waste Services' claim for breach of contract, arguing that the claim is time barred. In support of its Motion for Summary Judgment, Decatur County has asserted that a number of facts are undisputed for purposes of Rule 56. Local

Rule 56.1(a) requires a party seeking summary judgment to prepare a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local R. 56.1(a). A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite particular evidence in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

The non-moving party at summary judgment is required to respond to each of the moving party's statements of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local R. 56.1(b). Additionally, the non-moving party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Where the non-moving party asserts that a genuine dispute of material fact exists, the non-moving party must support his or her contention with a "specific citation to the record." Local R. 56.1(b). If the non-moving party fails to demonstrate that a fact is disputed or simply fails to address the moving party's statement of fact properly, the Court will "consider the fact undisputed for purposes" of ruling on the Motion. Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes

of summary judgment.").  Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Nearly all of the material facts related to the statute of limitations on Waste Services' breach of contract claim are undisputed.  The Decatur County Landfill ("the landfill") is owned by Decatur County.  (Def.'s Statement of Undisputed Fact ¶ 1.)  On March 4, 1996, Decatur County entered into an Agreement for Development and Operation of the Sanitary Landfill ("the contract") with Waste Services of America, Inc., the predecessor in interest to the rights of Waste Services under the contract.  (*Id.* ¶ 2.)  In 1999, Waste Services of America, Inc. assigned its interests in the contract to Waste Services, which was formerly a wholly-owned subsidiary of Waste Services of America, Inc.  (*Id.* ¶ 10.)

The contract's recitals stated that Decatur County desired to "be free of any and all future environmental liabilities associated with the operation and management" of the landfill, wanted "to protect the public safety, health and welfare, in the most economically feasible, cost effective and environmentally sound manner," and sought "the safest and most economic long-term solution to its solid waste disposal needs."  (*Id.* ¶ 3.)  Under the terms of the contract, Waste Services assumed full control and responsibility for the operation of the landfill.  (*Id.* ¶ 4.)  Waste Services agreed to operate the landfill through 2026 and then to oversee the closure of the landfill, all in compliance with all applicable environmental laws.  (*Id.* ¶¶ 5, 6, 8, 9.)  Decatur County agreed to use the landfill exclusively for the disposal of its solid and industrial waste.  (*Id.* ¶ 7.)

Leachate is the liquid that leaches from waste in a landfill.  (Pl.'s Statement of Add'l Facts ¶ 2.)  The amount of leachate produced by the landfill fluctuates; rainfall, the amount and type of waste in the landfill, and other variables all influence leachate production.  (*Id.* ¶ 4.)  Leachate

disposal and treatment is an expensive and important part of landfill operations. (*Id.* ¶ 3.) The contract provided that "[l]eachate disposal/treatment will remain at no cost to the [landfill] and [Waste Services] for the life of the site, in exchange for free disposal to Parsons and Decaturville pursuant to Schedule B of this Agreement." (Contract § 2.6, ECF No. 1-3). Schedule B, entitled "Decatur County's Tipping Fee and Surcharge," stated that "Decatur County and the municipalities within Decatur County will receive free disposal of residential waste" up to a certain amount. (Sch. B to Contract, ECF No. 1-3). Schedule B went on to describe a formula for the calculation of the amount of free disposal of waste promised to Decatur County and its municipalities but with the additional provision that "the Cities of Decaturville and Parsons will continue to receive free residential waste disposal . . . only so long as leachate treatment and disposal is provided at no cost to [the landfill] and [Waste Services]." *Id.*

Waste Services alleges that Decatur County has breached this term of the contract by not providing leachate disposal and treatment. Waste Services currently pays for all disposal and treatment of leachate at the landfill. (Pl.'s Statement of Add'l Facts ¶ 1.) Waste Services has devised the following treatment program for the leachate produced at the landfill. Leachate comes to one central location at the landfill and is then pumped into a lagoon system for aeration as part of a pretreatment process. (*Id.* ¶ 6.) Waste Services installed the lagoon system in 2012. (*Id.* ¶ 7.) Once the pre-treatment process is complete, the pre-treated leachate is pumped on to a truck which transports the leachate to a wastewater treatment facility in Dyersburg, Tennessee. (*Id.* ¶ 8.) According to Waste Services, the landfill produces approximately 15,000 gallons of leachate a week, filling 14 to 18 trucks. (*Id.* ¶¶ 9, 11.) This current volume actually represents a reduction from the amounts generated at the landfill three to four years ago. (*Id.* ¶ 11.) Waste Services has employed different wastewater treatment facilities and for-hire trucking companies over the years

to handle leachate. (*Id.* ¶¶ 12, 15.) From 2011 through late 2015, Waste Services expended $4,500,141.92 on leachate disposal and treatment at the landfill. (*Id.* ¶ 14.). Since late 2015, Waste Services has incurred annual expenses of approximately $1 million on leachate disposal and treatment. (*Id.* ¶¶ 16-17.) Decatur County has not paid Waste Services' fees or otherwise provided for the leachate disposal and treatment at the landfill. (*Id.* ¶ 18.)

The parties disagree over when Waste Services' claim for breach of the leachate treatment and disposal term accrued. Decatur County maintains that it has never provided Waste Services free leachate treatment and disposal at the landfill. (Def.'s Statement of Undisputed Fact ¶ 12.) The parties appear to agree that the wastewater treatment facility in Parsons has not treated leachate from the landfill since 2002 and that the wastewater treatment facility in Decaturville has not treated leachate from the landfill since at least July 2006. (Def.'s Resp. to Pl.'s Statement of Add'l Fact ¶ 19; Pl.'s Resp. to Def.'s Statement of Undisputed Fact ¶ 12, citing Waste Services' Answers to Def.'s First Set of Requests for Admission, ex. 1 to Def.'s Mot. for Summ. J., ECF No. 48-1.)

According to Decatur County, Waste Services first raised the issue of leachate treatment and disposal in 2007. David W. Pepper, who is currently vice-president and director of capital projects for Waste Industries USA, Inc., addressed letters in March 2007 to the cities of Parsons and Decaturville on behalf of Waste Services. (Def.'s Statement of Undisputed Fact ¶¶ 14, 15.) The letter stated as follows: "Waste Services of Decatur has honored the free disposal of solid waste from [Parsons and Decaturville] for the entire term of the agreement to date[;] however, we have not enjoyed the benefit of free disposal of leachate at the waste water treatment facilities." (*Id.* ¶ 16.) Waste Services adds that it received a letter in August 2007 from Dennis Henderson, president of TLM Associates, who explained that he "represent[ed] and [was] assist[ing] the City of Parsons toward a goal of allowing wastewater from [the landfill] into the City of Parsons Sewer

System." (Pl.'s Statement of Add'l Fact ¶ 20.) Henderson's letter requested specific samples and documentation from Waste Services. (*Id.* ¶ 21.) Waste Services claims that Decatur County never informed Waste Services that the County did not intend to perform its obligation to remove and treat the leachate until it responded to a letter from Waste Services in 2016. (*Id.* ¶¶ 18-19.) Parsons and Decaturville are not parties to the contract or to this lawsuit. (Def.'s Statement of Undisputed Fact ¶ 11.)

In its Motion for Summary Judgment, Decatur County argues that Waste Services filed its breach of contract claim outside of the six-year statute limitations for contract actions under Tenn. Code Ann. § 28-3-109(a)(3). A breach of contract claim accrues when a party first knows or should know that the party in breach will not perform. Decatur County contends that Waste Services should have known as early as 1999, when the contract was assigned to Waste Services, that the County did not intend to provide free leachate treatment and disposal at the landfill. Decatur County had not provided leachate treatment since the inception of the agreement in 1996 and has not provided it at any time during the term of the contract. Even assuming that Parsons and Decaturville had a duty to provide leachate treatment, the undisputed proof shows that neither municipality has provided leachate treatment since 2007, that is, several years outside of the six-year statute of limitations. The March 2007 letter from Waste Services to the municipalities confirms as much. Waste Services informed each municipality that if Waste Services did not begin to receive free water treatment, then Waste Services intended to charge the towns for trash pick-up, which had been free up to that time. The letter underscores the fact that Waste Services had not received what Decatur County had promised in the contract. Therefore, Waste Services knew or should have known as late as 2007 that any claim for breach of the contract had accrued.

Decatur County goes on to argue that the contract is entire and not severable. The contract provided comprehensive terms for Waste Services to assume management and control of the landfill for a period of 30 years. Waste Services cannot show then that each breach of the leachate provision triggered its own statute of limitations. Because Waste Services' breach of contract claim was filed in 2017 outside of the statute of limitations, Decatur County argues that it is entitled to judgment as a matter of law. For the same reasons, Decatur County believes it is entitled to the dismissal of Waste Services' claim for a declaration that Decatur County has breached the contract.

Waste Services has responded in opposition to the Motion for Summary Judgment. Waste Services begins by asserting that the parties' agreement is a divisible contract, meaning that each breach of the leachate clause carries its own six-year statute of limitations. In other words, Waste Services still has timely breach-of-contract claims for each of the breaches occurring within the six years preceding its suit. Waste Services points out that the contract does not specify that Decatur County must provide the leachate treatment and disposal at water treatment plants in Parsons or Decaturville. The contract also does not obligate Parsons or Decaturville to provide the treatment and disposal services. The agreement just requires the County to provide the treatment and disposal services at "no cost" to Waste Services. Waste Services further contends that the contract is severable and that each breach of the leachate provision gives rise to a new cause of action every time Decatur County fails to carry out its contractual obligation. Waste Services compares the contract to an agreement for installment or royalty payments to be made over a period of time. Waste Services reasons that its breach of contract claims for the leachate expenses incurred within the six years prior to its Complaint are therefore timely.

In the alternative, Waste Services argues that Decatur County never formally informed Waste Services that the County did not intend to perform its obligations to provide free leachate

treatment and disposal. Without actual repudiation of the contract, Decatur County never put Waste Services on notice that it would not honor its commitment regarding leachate disposal. Waste Services claims that it notified Decatur County in 2015 that the County was in breach of the agreement. Decatur County's conduct of simply not handling the leachate at the landfill is merely repudiation by implication. Decatur County did not explicitly inform Waste Services that it never intended to provide leachate treatment and disposal at the landfill until 2016. As a result, Waste Service's Complaint for breach of contract was filed within the six-year statute of limitations. Therefore, Decatur County has not shown that it is entitled to judgment as a matter of law on the breach of contract claim.

Decatur County has filed a reply. Decatur County disputes Waste Services' contention that the contract is severable. Decatur County points out that Waste Services' Complaint seeks a declaration that the County's alleged breach of the leachate provision should relieve Waste Services of any further obligation to perform under the agreement. Waste Services itself has alleged then that the contract is an entire agreement and that a breach of the leachate provision is tantamount to breach of the entire contract. Decatur County further argues that the Complaint alleges an entire system of leachate disposal, from the construction of lagoons to contracting for transportation and off-site treatment of by-product, and not a series of divisible transactions. Decatur County denies that the parties' agreement bears any resemblance to a contract for installment payments or royalties. Finally, Tennessee law does not require express repudiation of a contract in order for a cause of action for breach of contract to accrue. The undisputed facts show that Waste Services should have been on notice no later than 2007 that Decatur County did not intend to provide leachate treatment and disposal at the landfill. For all of these reasons,

Decatur County argues that the Court should dismiss Waste Services' claims for breach of contract and declaratory judgment.

The parties having fully briefed the statute of limitations issue, the Court concluded that additional briefing would aid the Court in making its determination of the issue. On July 25, 2018, the Court directed the parties to file additional briefs on the proper construction of section 2.6(iv) and Schedule B. The Court specifically ordered the parties to address the following questions: (1) the correct construction of section 2.6(iv) and Schedule B as a matter of Tennessee law; (2) whether section 2.6(iv) and Schedule B are ambiguous as a matter of Tennessee law; (3) if the contract is ambiguous, whether the Court can use appropriate rules of construction to arrive at the correct meaning of the contract as a matter of Tennessee law; (4) which Tennessee rules of contract construction, if any, are appropriate in this case; (5) to the extent the rules of construction implicate any question of fact, whether there exists a genuine dispute as to those facts; and (6) any other issues relevant to the proper construction of section 2.6(iv) and Schedule B. The Court also gave the parties notice that it was considering granting judgment as a matter of law on the proper construction of the contract and therefore instructed the parties to come forward with any evidence relevant to the proper constructions of the agreement's leachate provisions.

The parties' supplemental briefing on the questions then followed. Both sides argue that the leachate provisions are clear and unambiguous as a matter of law but then disagree over what the clear and unambiguous meaning of the terms are. Decatur County argues that the contract did not require it to cover the costs of leachate treatment at the landfill, emphasizing recitals to the contract in which Decatur County expressly declared its intention to be free from all environmental liabilities and receive "economically feasible, cost effective" waste disposal. The reading of the leachate clause proposed by Waste Services would render these recitals meaningless.

Furthermore, Waste Services' reading of the contract amounts to a term by implication, which is contrary to Tennessee public policy. If the Court holds that the contract is ambiguous, Decatur County argues that the parties' course of conduct is the best evidence of the correct interpretation of the agreement. Decatur County has never treated leachate from the landfill, and Waste Services never asked it to do so in over sixteen years of contractual performance. Waste Services demanded that the towns of Parsons and Decaturville provide leachate treatment at no cost but never made such a demand on Decatur County. Decatur County contends then that the Court should not construe the contract to require Decatur County to provide leachate treatment.

Waste Services counters that the express terms of the contract obligate Decatur County to provide leachate treatment. Section 2.6 of the contract lists the County's contractual obligations. The leachate clause appears as paragraph (iv) of this section. Decatur County assumed the duty to ensure that Waste Services would receive leachate treatment at no cost for the life of the contract. Parsons and Decaturville had no such duty because neither was a party to the agreement. The fact that the two local municipalities had water treatment facilities, and the County did not, is no evidence of the proper reading of the leachate clause. And there is no reason to find that Waste Services waived its right to have the agreement enforced by not bringing suit earlier. There is no evidence to show that Waste Service by its conduct intentionally gave up its right to hold Decatur County liable for the costs of leachate disposal. In the event the Court concludes that the contract is ambiguous, Waste Services argues that the extrinsic evidence supports its position that the parties intended for Decatur County to have responsibility for the costs of leachate treatment. Waste Services cites for support the declaration of Todd Skaggs, Waste Services' representative in the original negotiation of the contract. According to Skaggs, Waste Services bargained for the County to provide leachate treatment and disposal.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The question for the Court is whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law." *Id.* at 251–52. The Supreme Court has stated that "[t]hough determining whether there is a genuine issue of material fact at summary judgment is a question of law, it is a legal question that sits near the law-fact divide." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and the "judge may not make credibility determinations or weigh the evidence." *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

In this Circuit, the nonmoving party must "'put up or shut up' [on] the critical issues of [its] asserted causes of action." *Lord v. Saratoga Cap., Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In this case the Court has subject-matter jurisdiction by virtue of the parties' diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332. A federal court sitting in diversity applies the law of the forum state, including the forum's choice-of-law rules. *Atl. Marine Constr. Co. Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013); *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013). In contract cases, Tennessee follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" such as a valid contractual choice-of-law provision. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (applying Tennessee law); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). The parties in this case agree that the substantive law of the state of Tennessee governs their contractual dispute. Their original 1996 contract contains a choice-of-law provision, stating that Tennessee law will govern their agreement and its construction. Mar. 4, 1996 Agreement § 17, ex. 1 to Compl. (ECF No. 1-3). As such, the Court will apply Tennessee law in reaching the questions of contract law presented at summary judgment.

## ANALYSIS

The primary issue presented in Decatur County's Motion for Summary Judgment is whether Waste Services has brought its claim for breach of contract within the applicable statute of limitations. Before reaching this question, the Court first considers the correct construction of the contract and specifically what the parties intended as far as the treatment and disposal of leachate at the landfill. Under Tennessee law, courts construing the terms of a contract ascertain the intent of the parties based on the ordinary and natural meaning of the words used in the

instrument. *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012); *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). A court must consider the entire contract in construing any or all of its parts. *Cocke Cnty. Bd. of Highway Cm'rs. v. Newport Util. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). This means that "a contract must be viewed from beginning to end, and all its terms must pass in review, for one clause may modify, limit, or illuminate another." *Id.* The construction of a contract presents a question of law. *Toomey v. Atyoe*, 32 S.W. 254, 256 (Tenn. 1895); *Manley v. Plasti-Line, Inc.*, 808 F.2d 468, 471 (6th Cir. 1987); *see also* 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2730.1 (3d. ed. 2009) ("The legal effect or construction of a contract is a question of law that properly may be determined on a summary-judgment motion when the parties' intentions are not in issue.").

"A court's initial task in construing a contract is to determine whether the language of the contract is ambiguous." *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The Court has ordered the parties to brief the construction of the leachate provisions separately and present all evidence on which they rely to support their respective positions. Each side argues that the contract's terms concerning leachate are clear and unambiguous. "If the contract language is unambiguous, then the parties' intent is determined from the four corners of the contract." *Ray Bell Const. Co., Inc. v. State, Tenn. Dept. of Transp.*, 356 S.W.3d 384, 387 (Tenn. 2011) (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)).

The relevant provision of the contract is section 2.6, entitled "Covenant for Delivery of Waste." Section 2.6 required Decatur County to "use its best efforts to deliver or cause to be delivered all Waste generated" in the service area defined in the contract. (Contract § 2.6, ECF

No. 1-3).  Section 2.6 concluded with an enumerated list of duties, which the County agreed to undertake.  This final portion of section 2.6 read in full as follows:

> "To the extent allowed by law and consistent with the Constitutions of Tennessee and the United States, the County shall (i) exclusively use the Landfill for the disposal of its Special Waste and Solid Waste; (ii) not contract with any other Person for services which are the same or similar to those provided by [Waste Services] in this Agreement, unless notice of termination has been provided by [Waste Services] to the County pursuant to Section 8.2 hereof; **and** (iii) not establish or operate a solid waste management and/or disposal facility within the Service Area offering the same or similar services as those provided by [Waste Services] in this Agreement; provided, however, that nothing herein shall prevent the County and Contracting Municipalities from implementing waste recycling and waste reduction programs. *[sic]* (iv) Leachate disposal/treatment will remain at no cost to the [landfill] and [Waste Services] for the life of the site, in exchange for free disposal to Parsons and Decaturville pursuant to Schedule B of this Agreement."  (*Id.*)  (emphasis added).

Schedule B included a formula for how much waste Decatur County and its municipalities could dispose of at the landfill at no expense.  The parties further agreed in Schedule B that "Decaturville and Parsons will continue to receive free residential waste disposal . . . only so long as leachate treatment and disposal is provided at no cost to [the landfill] and [Waste Services]."  (Sch. B to Contract, ECF No. 1-3).

Waste Services' breach of contract claim is premised on its reading of these provisions and its position that section 2.6(iv) together with Schedule B (hereinafter "the leachate clause") obligated Decatur County to cover Waste Services' leachate costs.  *See* Compl. ¶ 3.  Section 2.6 included a series of contractual duties to be performed by Decatur County.  Section 2.6(iv) clearly promised Waste Services "[l]eachate disposal/treatment . . . at no cost" for the full 30-year term of the agreement.  Paragraph (iv) immediately followed the final full sentence of section 2.6, a sentence which had as its subject and auxiliary verb "the County shall."  Although section 2.6(iv) refers to free waste disposal for the towns of Parsons and Decaturville "in exchange" for free leachate treatment and disposal, nothing specifically required the towns to provide free leachate

treatment and disposal. In fact, the towns themselves were not even parties to the agreement. The County was the only other party to the agreement. It follows then that the duty to provide free leachate treatment must be Decatur County's. Therefore, as Waste Services reads the leachate clause, the County had a contractual duty to cover the costs of the landfill's leachate.

Waste Services' reading of the leachate clause is a permissible construction of the contract. Section 2.6 contains the words "the County shall" followed by three numbered, predicate clauses, all specifically defining duties of Decatur County. Section 2.6's use of the term "shall" clearly suggests a mandatory contractual duty. *See Emory v. Memphis City Schs. Bd. of Educ.*, 514 S.W.3d 129, 144 (Tenn. 2017) ("In general, use of the word 'shall' in a statute indicates that the statutory provision is mandatory, not discretionary."). However, none of Decatur County's enumerated duties in clauses (i), (ii), or (iii) of section 2.6 related to leachate. The fourth numbered clause, subparagraph (iv) containing the leachate term, does not fit neatly within the overall structure of section 2.6. The first three predicate clauses of the sentence were numbered (i), (ii), and (iii); punctuated by semicolons; and concluded with the word "and" just before clause (iii) and a period at the end of clause (iii). Grammatically, the most natural interpretation of the sentence is to read each of the clauses (i), (ii), and (iii) as duties "the County shall" perform with clause (iii) as the final duty and the conclusion of the sentence. The leachate clause, which is preceded by the number "(iv)," follows the sentence with clauses (i), (ii), and (iii) but is not actually part of the sentence. In fact, it is not clear why the leachate clause was preceded by "(iv)." The use of "(iv)" is inconsistent with the rest of section 2.6, and the clause in no way fits or agrees with the rest of the clauses in the preceding sentence.

What is more, even if paragraph (iv) is read together with the other contractual duties of the County listed in section 2.6, paragraph (iv) does not clearly and unambiguously require Decatur

County to provide leachate treatment and disposal "at no cost" to Waste Services. At best, paragraph (iv) only implies such a duty. As Waste Services argues, paragraph (iv) clearly states that Waste Service will receive free leachate treatment and disposal but "in exchange" for free residential waste disposal for the towns of Parsons and Decaturville. If Decatur County owes Waste Services free leachate treatment and disposal, its duty is merely implied from the inartful drafting of paragraph (iv). And as Decatur County correctly argues, public contracts are strictly construed under Tennessee law, and "nothing passes by implication." *U.S. for Use of E. & R. Const. Co., Inc. v. Guy H. James Const. Co.*, 390 F. Supp. 1193, 1206 (E.D. Tenn. 1972) (citing *Volunteer Elec. Co-op. v. T.V.A.*, 139 F. Supp. 22 (E.D. Tenn. 1954)).

Waste Services' reading also fails to give full effect to all of the terms in section 2.6. Specifically, this construction does not account for section 2.6's use of the phrase "Contracting Municipalities" and its direct references to the towns of Parsons and Decaturville. Section 2.6(iii) reserved for Decatur County and the "Contracting Municipalities" the right to create recycling programs. And as previously mentioned, section (iv) promised free trash disposal for the towns of Parsons and Decaturville in exchange for free leachate treatment. Section (iii)'s use of the phrase "Contracting Municipalities" and capitalization of both words of the phrase suggests that "Contracting Municipalities" was a defined term in the contract. Generally, contracts incorporate definitions for certain terms and then capitalize defined terms throughout the document. One would expect that "Contracting Municipalities" might reasonably include towns like Parsons and Decaturville. And yet the contract's definitions section, section 1, did not include "Contracting Municipalities" as one of the contract's defined terms. Nothing else in the contract suggests that any "Contracting Municipalities," including Parsons or Decaturville, were parties to the agreement. The fact then that section 2.6 uses the phrase "Contracting Municipalities" and seems

to make free residential trash disposal for the towns of Parsons and Decaturville conditional on leachate treatment raises questions about the correct meaning of section 2.6 and what role, if any, towns like Parsons and Decaturville actually played under the agreement.

In sum, Waste Services has proposed a plausible reading of the leachate clause but a reading that fails to account for all of the language of section 2.6. *Maggart*, 259 S.W.3d at 704 (holding that courts must interpret contracts to give "reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect"); *see also Town of Smyrna, Tenn. v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 646 (6th Cir. 2013) (citing *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)). All of the features of section 2.6 noted by the Court cast some doubt on Waste Services' construction of the leachate clause, reading it to impose a specific duty on Decatur County to cover the costs of leachate treatment and disposal.

For its part Decatur County reads the leachate clause to be a simple exchange of performance: Waste Service would receive leachate treatment at water treatment facilities in the towns of Parsons and Decaturville "at no cost" in exchange for free waste disposal for each municipality. Or as Schedule B stated it, the local towns would receive free residential waste disposal "only so long as" Waste Services received free leachate treatment and disposal. Neither section 2.6 nor Schedule B spells out which party would become responsible for the landfill's leachate, if the towns stopped providing treatment and disposal, a question that lies at the heart of the dispute between Waste Services and Decatur County. Schedule B strongly suggests that in the event Parsons and Decaturville stopped providing Waste Services with free leachate treatment, Waste Services was entitled to discontinue the free waste disposal for the towns and that a town's failure or refusal to provide Waste Services with free leachate treatment would mean no more free

trash disposal at the county landfill for that town. The upshot of this construction is that neither section 2.6(iv) nor Schedule B obligated the County to furnish water treatment for Waste Services or offer Waste Services compensation for any costs Waste Services might incur for leachate treatment. The leachate clause was completely silent about any duty the County had in the event both Parsons and Decaturville stopped providing Waste Services with free leachate treatment.

While Decatur County's construction of the leachate clause is certainly plausible, the Court finds that Decatur County's reading of the leachate clause suffers from two principle defects. First and foremost, it fails to address the simple fact that section 2.6(iv) clearly stated that "leachate disposal/treatment will remain at no cost to the [landfill] and [Waste Services] for the life of the site . . . ." This language remains the strongest evidence to support Waste Services' position that it would never be required to pay for leachate treatment and disposal and that the County, as the only other party to the contract, must have the duty to pay the landfill's leachate costs. Second and relatedly, to the extent that the language of Schedule B suggests that the free waste disposal for the towns was conditioned on the towns providing leachate treatment at their water treatment facilities, the leachate clause is more properly understood as a duty for the County, not a condition precedent. Schedule B provided that Parsons and Decaturville would receive free waste disposal "only so long as" Waste Services received free leachate treatment. Schedule B's use of the phrase "only so long as" arguably had the effect of conditioning Waste Services' performance on the continuing performance of the towns. *See Harlan v. Hardaway,* 796 S.W.2d 953, 958 (Tenn. Ct. App. 1990) ("[T]he presence of a condition is usually signaled by a conditional word or phrase such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' and 'subject to.'"). However, conditions precedent are disfavored, and courts interpret "doubtful language" like the leachate clause "as imposing a duty rather than creating a condition precedent." *Mahan Jets, LLC v. Roadlink Transp.,*

*Inc.*, 68 F. Supp. 3d 817, 826–27 (W.D. Tenn. 2014) (quoting *Harlan*, 796 S.W.2d at 958). These reasons all tend to suggest that the best reading of the leachate clause is to require Decatur County to provide water treatment at no cost to Waste Services.

Both parties have advanced plausible readings of the leachate clause, and under Tennessee contract law, terms are not ambiguous merely because the parties disagree as to the interpretation of a given clause. *Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). Whatever merit each party's reading of the leachate clause may have, neither party's construction yields a clear and unambiguous reading of the contract as a whole. In the final analysis, the Court cannot determine the intention of the parties "by a literal interpretation of the language" in section 2.6(iv) and Schedule B. *Maverick Grp. Mktg., Inc. v. Worx Envtl. Prods., Inc.*, 99 F. Supp. 3d 822, 836 n.45 (W.D. Tenn. 2015) (quoting *Planters Gin. Co.*, 78 S.W.3d at 890)). As a result, the Court concludes that the leachate clause is ambiguous because section 2.6(iv) and Schedule B are "of uncertain meaning and may fairly be understood in more ways than one." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975). The Court must now proceed to employ rules of construction and consider parol evidence to arrive at the meaning of the leachate clause. *Planters Gin Co.*, 78 S.W.3d at 890; *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 612 (Tenn. 2006).[1]

When confronted with an ambiguous contractual provision like the leachate clause, the Court may look to "the contracting parties' conduct and statements regarding the disputed

---

[1] The Court's use of the rules of construction to resolve an ambiguity on the face of the contract continues to be a question of law, properly considered at summary judgment under Rule 56 of the Federal Rules of Civil Procedure. "Only if ambiguity remains after the court applies the pertinent rules of construction does the legal meaning of the contract become a question of fact" for a jury to resolve. *Planters Gin Co.*, 78 S.W.3d at 890 (quoting *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235, 1239 (5th Cir. 1981)).

provision." *Watson*, 195 S.W.3d at 612 (citing *Memphis Housing Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001)). The Court finds that the strongest parol evidence of the contract's meaning was the conduct of each party in their course of performance, from the genesis of the contract in 1996 through Waste Services' demand on the County to pay the landfill's leachate costs in 2015. First, the undisputed evidence shows that at no time since the inception of the contract in 1996 had Decatur County ever paid the costs of leachate treatment and disposal at the landfill. Proof introduced in support of Waste Services' own statement of additional facts shows that between 1999 and 2006, at times when Parsons and Decaturville (and after 2002, just Decaturville) were still assisting with water treatment at the landfill, Waste Services incurred annual leachate costs in amounts ranging from as little as $7,424.00 in 1999 to as much as $299,832.99 in 2006. Ex. A to Pepper Decl. (ECF No. 60-1.) Between 2007 to 2015, Waste Services' annual leachate costs escalated from $254,072.02 in 2007 and peaked at $1,299,828.94 in 2013. *Id*. Between 1999 and 2015, Waste Services had total expenses associated with the landfill's leachate in the amount of $7,172,762.55, with almost $2.2 million in disposal costs and $4.3 million in hauling costs.[2] *Id.* It is, therefore, undisputed that Waste Services incurred significant costs and expenses associated with leachate treatment and disposal almost from the time it was assigned the rights to the contract with Decatur County in 1999. There is no proof to show that Decatur County ever paid any of the landfill's leachate costs after 1996.

Second, the undisputed evidence shows that despite the significant costs associated with leachate, Waste Services never made a demand on Decatur County for the payment of the leachate costs, at least not for the first fifteen or sixteen years Waste Services operated the landfill after it

---

[2] According to the Pepper declaration, Waste Services had slightly under $700,000 in unspecified "other" costs related to leachate. Ex. A to Pepper Decl. (ECF No. 60-1.)

was assigned all rights to the contract. During that time Waste Services consistently had annual leachate costs in the hundreds of thousands of dollars. If Waste Services believed that Decatur County was responsible for these expenses, one would have expected Waste Services to demand that the County perform its obligations under section 2.6(iv) or Schedule B before 2015. This proof tends to show that Waste Services by its conduct over sixteen years did not understand that Decatur County had a contractual duty to pay the landfill's leachate costs.

Finally, Waste Services' course of conduct reflected its understanding of section 2.6 (iv) and Schedule B that the towns of Parsons and Decaturville were to provide leachate treatment for the landfill, not Decatur County. It is undisputed that the towns of Parsons and Decaturville handled the leachate treatment needs of the landfill, at least in part and up to a discrete point in time. But after both towns refused to continue to handle leachate from the Decatur County Landfill, Waste Services approached Parsons and Decaturville about the leachate issue in March 2007. Waste Services raised the issue with the municipalities in separate letters dated March 30, 2007, with copies of the letters to the Decatur County mayor. Each letter contained identical language, showing how Waste Services understood its rights under the agreement: "when the agreement was established[,] it was envisioned by all parties that leachate from landfill would be disposed at no cost to the Decatur County Landfill at either the Town of Parsons or Town of Decaturville wastewater treatment facilities in exchange for free disposal of solid waste from these two municipalities." *Id*. Waste Services cautioned the towns about the consequences of the parties' failure to work out an accommodation: "In lieu of receiving the benefit of free leachate disposal, Waste Services of Decatur will be forced to begin charging for the disposal of solid waste from these municipalities. Effective July 1, 2007, Waste Services will begin charging the gate rate, $32.50/ton, for disposal of solid waste generated by the Town of Decaturville and the Town of

Parsons. This will allow you enough time to put this into your annual budget. Again, our preference would be to continue to receive this waste at no disposal cost and simply enjoy the no cost leachate disposal that has been previously agreed to." *Id*.

Although the record does not show whether additional negotiations took place or what course they may have taken, it is undisputed that Parsons and Decaturville never resumed water treatment for the landfill. What is more, there is no evidence that Waste Services ever made a demand on Decatur County to pay for its leachate treatment until many more years had passed.

The Court holds that taking all this evidence together and viewing it in a light most favorable to Waste Services, the parties' performance was consistent with Decatur County's reading of the contract, not Waste Services'. This proof tends to support Decatur County's construction of the leachate clause as a straightforward exchange of performance: free waste disposal for Parsons and Decaturville in exchange for free leachate disposal for Waste Services. Waste Services paid its own leachate costs from 1999 on. As those costs grew more substantial, Waste Services initiated discussions in 2007 with the municipalities in an apparent attempt to reach a new accommodation for free leachate treatment and disposal. Waste Services copied Decatur County on its demand letter to the towns but otherwise did not make any demands on Decatur County to take responsibility for the landfill's leachate costs. This course of performance offers no support for Waste Services' reading of section 2.6(iv) or Schedule B. Waste Services did not operate the landfill in any way to suggest that it expected the County to assume responsibility for the landfill's leachate expenses, at least not until 2015.

The only additional proof adduced by Waste Services is the declaration of its corporate officer with knowledge of the contract negotiations. Todd Skaggs, who as president of Waste Services of America negotiated the original agreement with Decatur County in 1996, has affirmed

that Waste Services wanted and bargained for the County to pay for the landfill's leachate expenses.  *See* Skaggs Decl. (ECF No. 88-2).  According to Skaggs, it did not matter to Waste Services whether the County arranged for leachate treatment at the municipal water treatment facilities in Parsons or Decaturville or at other facilities.  Waste Services just understood that the contract required Decatur County to pay for the leachate costs.[3]  But Skaggs' perceptions concern the parties' negotiations in 1996; they do not speak to the course of performance, particularly why Waste Services did not seek recourse from Decatur County between 1999 and 2015.  Skaggs' testimony does not alter the Court's conclusion that the contract on its face is ambiguous or the undisputed parol evidence concerning the parties' actual performance and course of dealing.

In light of the foregoing, the Court concludes that as a matter of law, the parties' agreement, specifically section 2.6(iv) and Schedule B, did not require Decatur County to pay the landfill's leachate costs and expenses.  The leachate clause merely gave the towns of Parsons and Decaturville free residential waste disposal at the landfill "in exchange for" and "only so long as" the towns provided Waste Services with free leachate treatment and disposal.  Where as here the towns discontinued leachate treatment and disposal, the towns simply lost their right to receive free trash disposal.  Decatur County had no contractual duty to pay for the landfill's leachate expenses.  Therefore, Decatur County is entitled to judgment as a matter of law on Waste Services' breach of contract claim.

---

[3] The Skaggs declaration perhaps suggests that the parties had differing, even incompatible, understandings when they entered into the contract in 1996, at least where leachate was concerned. But there is nothing to suggest that the parties failed to have a meeting of the minds, a fact that might go to whether they formed a contract at all.  *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012) (holding that an enforceable contract must result from a meeting of the minds of the parties in mutual assent to the terms).

In the alternative, even if Decatur County had a contractual duty to pay for Waste Services' leachate costs, the statute of limitations on a breach of contract claim has run. In Tennessee, the essential elements of a breach of contract claim are as follows: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd.*, 79 F.3d 496, 514 (6th Cir. 1996); *C & W Asset Acquisition, LLC v. Oggs,* 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Any action based on contract must commence within six years "after the cause of action accrued." Tenn. Code Ann. § 28–3–109(a)(3).

The Tennessee Supreme Court has explained that statutes of limitations are "shields, not swords" and reflect "a societal choice that actions must be brought within a certain time period." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (citations omitted). Statutes of limitations under Tennessee law "(1) promote stability in personal and business relationships, (2) give notice to defendants of potential lawsuits, (3) prevent undue delay in filing lawsuits, (4) avoid the uncertainties and burdens inherent in pursuing and defending stale claims, and (5) ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness." *Id.* (internal quotations marks and citations omitted). By enacting statutes of limitations, the Tennessee legislature presumes that "persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." *Id.* (citations omitted).

A statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). When a party seeks judgment as a matter of law on a statute of limitations, the Court must decide two questions: "(1) whether the statute of limitations has run

and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued." *Henry v. Norfolk S. Ry. Co.*, 605 F. App'x 508, 510 (6th Cir. 2015) (quoting *Campbell v. Grand Trunk W. R.R. Co.,* 238 F.3d 772, 775 (6th Cir. 2001)).  As the party invoking the statute of limitations, Decatur County has the burden to prove that the statute of limitations has run on Waste Services' claim for breach of contract and that no genuine issue of material fact exists as to when the claim accrued.  *Id.*  If Decatur County can discharge its burden to show that the claim is now time barred, the burden shifts to Waste Services to prove an exception to the statute of limitations.  *Redwing*, 363 S.W.3d at 463–64, 467; *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).

Waste Services filed suit on February 17, 2017.  Its breach of contract claim is timely under Tennessee's six-year statute of limitations, only if the cause of action accrued on or after February 17, 2011.  If the claim accrued before that date, then Waste Services filed its Complaint out of time.  In Tennessee, "[t]he statute of limitations begins to run [on a contract claim] as of the date of the breach." *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995); *see also State of Use of Cardin v. McClellan*, 85 S.W. 267, 269 (Tenn. 1905) ("[T]he cause of action . . . for the breach of a contract . . . accrues immediately upon the happening of . . . the breach, even though the actual damage resulting therefrom may not occur until some time afterwards.").  The date of the breach is another way of saying the day "when a contracting party first knows or should know that the contract will not be performed," *Wilkins v. Third Nat. Bank in Nashville*, 884 S.W.2d 758, 761–762 (Tenn. Ct. App. 1994) (citing *Foust v. Carney*, 329 S.W.2d 826, 829 (Tenn. 1959)), or "when one party demonstrates a clear intention not to be bound by the contract." *Coleman Mgmt., Inc. v. Meyer,* 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009)).  "Ordinarily, the question of whether a plaintiff knew or should have known that a cause of action existed is a question of fact,

inappropriate for summary judgment." *City State Bank v. Dean Witter Reynolds, Inc.,* 948 S.W.2d 729, 735 (Tenn. Ct. App. 1996).

Applying these principles to the facts of this case, the Court holds that Waste Services' claim against Decatur County accrued more than six years before Waste Services filed suit in February 2017. Waste Services first knew or should have known that Decatur County had breached the leachate clause by failing to cover the expense of leachate treatment as early as 1999 and certainly no later than 2007. The undisputed evidence shows that Waste Services was assigned all interests in the contract to manage and operate the Decatur County landfill in 1999. The undisputed evidence further shows that at no time since the inception of the contract in 1996 had Decatur County ever paid the costs of leachate treatment and disposal at the landfill. Instead, the towns of Parsons and Decaturville handled the leachate treatment needs of the landfill. As previously discussed, Waste Services incurred costs and expenses associated with leachate treatment and disposal almost from the time it was assigned the rights to the contract with Decatur County in 1999.

What is more, it remains undisputed that Parsons has not treated leachate from the landfill since 2002, and Decaturville has not treated the landfill's leachate since 2006.[4] Between the years 2007 to 2010 when both towns had ceased to provide leachate treatment, Waste Services had

---

[4] It is not clear that Parsons and Decaturville provided water treatment for the landfill's leachate free of charge to Waste Services. The County's Counterclaim alleges that Parsons and Decaturville actually charged Waste Services for leachate treatment. *See* Decatur Cnty.'s Countercl. ¶¶ 21-23 (describing the leachate controversy of 1996 between Waste Services and Decaturville); 63 ("In 2006, Decaturville stopped accepting leachate for a fee from the Landfill and never resumed leachate treatment service."). Decatur County has not relied on its Counterclaim to support its Motion for Summary Judgment. *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014) ("[T]he evidence in the record, not the pleadings, governs whether a party has raised a genuine dispute of material fact sufficient to survive a motion for summary judgment.") (citing *Celotex Corp.*, 477 U.S. at 324). The Court simply notes these allegations for the record.

annual leachate expenses of $254,072.02 (2007); $635,453.82 (2008); $412,067.07 (2009); and $473,637.27 (2010), respectively. *Id*. This evidence shows that if, as Waste Services alleges in its Complaint, Decatur County had a contractual duty to cover the leachate costs at the landfill, Waste Services knew or should have known that Decatur County had breached its alleged contractual obligation to take care of the leachate expenses at the landfill. The County breached its duty the first time Waste Services was forced to pay the expense itself and certainly no later than 2006 or 2007, by the time that both Parsons and Decaturville no longer treated leachate from the landfill. *See Bryson v. City of Chattanooga*, 338 S.W.3d 517, 523 (Tenn. Ct. App. 2010) ("A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce.") (quoting *Hodge v. Serv. Mach. Co.*, 438 F.2d 347, 349 (6th Cir. 1971)). The Court concludes then that Waste Services knew or should have known no later than 2007 that the County was not performing its alleged contractual obligation. Therefore, any cause of action Waste Services had on its theory that Decatur County was in breach of the leachate clause accrued in 2007 at the latest, and Waste Services' Complaint for breach of contract and declaratory judgment is now time-barred.

To avoid this outcome, Waste Services argues that Decatur County did not formally repudiate its obligations under the agreement until 2016, an act that triggered the six-year statute of limitations.[5] It is true under Tennessee law that a cause of action for breach of contract may accrue upon "total repudiation of the contract." *Wilkins*, 884 S.W.2d at 761–762 (Tenn. Ct. App. 1994). A repudiation is defined as "[a] contracting party's words or actions that indicate an

---

[5] Waste Services also argues that questions of fact remain over whether the town of Parsons formally repudiated the contract. The problem with this argument is that the towns were not parties to the contract and Waste Services has not named the towns as parties to its breach of contract claim. It is not clear then why the conduct of towns would affect the accrual of any cause of action for breach of contract.

intention not to perform the contract *in the future*."  Black's Law Dictionary (10th ed. 2014) (emphasis added).  Tennessee refers to this as the doctrine of anticipatory repudiation, meaning a repudiation, which "occurs before the time that a contract requires a party to perform." *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007).  Waste Services cites for support only cases involving anticipatory repudiation.  Pl.'s Resp. in Opp'n 13-14 (citing *Wright v. Wright*, 832 S.W. 2d 542, 545 (Tenn. Ct. App. 1991); *Crown Am. Cor. v. Oliver Smith Realty & Auction Co.*, 51 F.3d 271, 1995 WL 140830, *3 (6th Cir. 1995) (table)).  But Waste Services' is not a case of anticipatory repudiation or anticipatory breach.  Waste Services has not alleged that Decatur County refused to pay leachate costs "before the time" Decatur County was required to perform. Waste Services has alleged that the County was obligated to pay leachate costs from the beginning of the parties' agreement and failed to do so.  In other words, Waste Services claims that its cause of action did not formally accrue until year 19 of a 30-year contract but with no citation to support the proposition that a breach of contract claim *only* accrues when the party formally repudiates the agreement.

And nothing in the contract's cure provisions affected the accrual of Waste Services' breach of contract claim.  Section 11.3 gave a party in breach of a contractual obligation 90 days to cure, or actively pursue action intended to cure, the breach, upon receipt of written notice of the breach from the non-breaching party.  If a breach of the agreement went uncured and ripened into an event of default, Section 11.4(a) granted the non-defaulting party the right to cure the event of default at its own expense, upon five days prior written notice to the defaulting party.  In the alternative, the non-defaulting party had the right to take legal action against the defaulting party based on the event of default and terminate the contract.  Section 11.4(c) provided, however, that

neither party could terminate the contract without first giving the defaulting party 120 days prior written notice of termination.

The parties' conduct apparently followed the contract's specific cure provisions for any breach or event of default.[6]  The proof shows that Waste Services formally notified Decatur County that it was in breach of the leachate clause by letter on December 15, 2015, and that Decatur County's repudiation of the contract in 2016 occurred in response to this notice.  Public policy and good commercial reasons support the use of contractual cure provisions.  However, Waste Services has cited, and the Court is aware of, no authority that a contractual cure provision will toll the accrual of a cause of action for purposes of Tennessee's six-year statute of limitations.   The fact then that Waste Services waited until 2015 to follow the cure provisions of the contract in no way changes the fact that Decatur County had allegedly been in breach of the contract and that Waste Services had a cause of action for the breach many years before.

This leaves Waste Services' theory that the parties' contract was severable and that each breach of the leachate clause gave rise to a new cause of action against Decatur County.   "A contract is severable where each part is so independent of each other as to form a separate contract. *Collins v. Summers Hardware and Supply Co.*, 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002) (citations and internal quotation marks omitted).  Classic examples of a severable contract include installment loan agreements, *Greene*, 915 S.W.2d at 812 (citing *Farmers & Merchants Bank v. Templeton,* 646 S.W.2d 920, 923 (Tenn. Ct. App. 1982)), and royalty contracts.  Otherwise, a contract is entire or continuing "when the promises of both parties are interdependent and relate to the same subject matter." *Id.*

---

[6] Section 11.2 defined "Events of Default" to include the initiation of bankruptcy proceedings involving Waste Service of America, Inc., Waste Services predecessor in interest, as well as any uncured breach of the agreement.

The Court holds that the contract in this case was entire, and not severable or divisible. The parties' comprehensive agreement provided for Waste Services' management and operation of the Decatur County landfill for a term of 30 years with the right to accept waste from a defined service area. The premise of Waste Services' breach of contract theory, that Decatur County promised to pay for the landfill's leachate costs, clearly relates to the same subject matter of the agreement for the operation of the landfill. According to the declaration of Waste Services' own executive, the leachate clause was a key element within the overall structure of the agreement, which is another way of saying that the County's alleged duty to dispose of leachate was interdependent on Waste Services' promises to manage the landfill. Waste Services' reading of the contact in no way suggests that the contract's leachate clause was an independent agreement, amounting to a separate contract. The Court finds then that Waste Services' has not shown that the contract was severable.

The Court concludes that even if Waste Services was correct and Decatur County was contractually obligated to pay for the landfill's leachate expense, the statute of limitations on such a claim is now time barred. Therefore, Decatur County's Motion for Summary Judgment is **GRANTED** on the statute of limitations issue.

**CONCLUSION**

The Court holds that Decatur County is entitled to judgment as a matter of law on the issue of whether Decatur County had a contractual duty to pay for the landfill's leachate costs. In the alternative, even if Decatur County was bound to pay the leachate costs, Waste Services filed its breach of contract claim outside of Tennessee's six-year statute of limitations, and Decatur County's Motion for Summary Judgment on the statute of limitations issue is **GRANTED.**

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: February 5, 2019.